UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE HARTFORD COURANT COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK L. CARROLL III, in his Official Capacity as Chief Court Administrator of the Connecticut Superior Court; and<br><br>ANN-MARGARET ARCHER; KAREN A. BERRIS; ROBERT BURKE; ANTONIO D'ADDEO; RALPH DAGOSTINE; CYNTHIA DEGOURSEY; JILL DRISCOLL; CAROLINE FARGEORGE; TAMMY FLUET; DAVID S. GAGE; ERIC R. GROODY; LISA C. GROODY; RICHARD L. HAAS, JR.; KERRI HALL; WILLIAM M. HOEY; JUDITH LEE; LAURA A. LEIGH; DEBORA KASZUBA NEARY; CARA PARKINSON; BRANDON PELEGANO; GINA PICKETT; JAMES QUINN; JENNIFER ROBINSON; MARK SHEA; ROY SMITH, JR.; GIOVANNI SPENNATO; GEOFFREY STOWELL; HARALABOS VALASSIS; JULIE VANAM; ROBERT A. WILOCK, II; BRANDI YANAVICH; and MARCI YOUNG, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court,<br><br>Defendants. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.     Enacted in July 2019, Connecticut Public Act No. 19-187 (hereinafter, the "Juvenile Transfer Act" or "Act"), establishes a new statutory secrecy scheme applicable to the

1

adjudication of criminal matters transferred from juvenile court to adult criminal court. When a juvenile offender is at least fifteen years of age and his or her alleged offense would fall into certain classes of felonies if committed by an adult, the Act allows for (and in some cases mandates) transfer of the case to adult criminal court. Conn. Gen. Stat. Ann. § 46b-127(a)–(b) (West 2019). The Act requires that all proceedings in such matters transferred to adult criminal court be conducted in private, and that judicial records in such matters remain under seal unless and until the criminal defendant is found or pleads guilty. These provisions, on their face, violate the presumptive right of members of the press and the public to attend criminal proceedings and inspect judicial records in criminal cases—rights guaranteed by the First Amendment to the U.S. Constitution and article first, sections 4 and 5 of the Connecticut Constitution. Accordingly, plaintiff The Hartford Courant Company, LLC (hereinafter, the "Courant"), publisher of *The Hartford Courant*, seeks a judicial declaration that Connecticut Public Act No. 19-187 is unconstitutional.

## JURISDICTION AND VENUE

2. This action is brought under 42 U.S.C. §1983. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201–02.

3. Venue in this District is proper pursuant to 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff the Courant is the publisher of *The Hartford Courant*, the most widely circulated newspaper in Connecticut. Reporters for the Courant regularly report on matters of public concern in Connecticut, including criminal proceedings in Connecticut courts involving juvenile defendants tried as adults. *See* Ex. A, Declaration of Andrew Julien ("Julien Decl.").

5. Defendant Carroll is a Judge within the Judicial Branch of the State of Connecticut and is the Chief Court Administrator of the Connecticut Superior Court, having all of the powers and duties conferred upon that position by the laws of the State and the Rules of the Connecticut Superior Court. He is being sued solely in his official capacity as Chief Court Administrator.

6. Defendants Archer, *et al.* (hereinafter, collectively, the "Court Clerk Defendants") are Chief Clerks of Judicial District courts within the Connecticut Superior Court or Deputy Chief Clerks of Geographical Area courts within the Connecticut Superior Court. Among the general administrative duties of the Court Clerk Defendants are to "make records of all proceedings required to be recorded" to "have the custody of . . . records of the court" and to "make and keep dockets of causes in their court locations." Conn. Gen. Stat. § 51-52 (a). Each of the Court Clerk Defendants is being sued solely in his or her official capacity as a Chief Clerk or Deputy Chief Clerk.

## FACTS

**The Juvenile Transfer Act**

7. The Juvenile Transfer Act was enacted on July 9, 2019. It amends existing law governing the transfer of criminal cases involving juveniles charged with felonies from juvenile court to adult criminal court. *See generally* Pub. Act. 19-187, Gen. Assemb., Reg. Sess. (Conn. 2019). The Act makes several changes to section 46b-127 of the General Statutes of Connecticut ("Section 46b-127"), which governs the transfer of cases from juvenile to adult court for defendants between the ages of fifteen and eighteen who have been charged with certain felonies (hereinafter, "Transferred Matters"). *See generally* Conn. Gen. Stat. Ann. § 46b-127 (West 2019).

8. Juvenile defendants prosecuted in Transferred Matters are subject to the full range of penalties and the applicable procedures of adult criminal court.

9. The Act provides that all proceedings in Transferred Matters "shall be private." § 46b-127(c)(1)(A). It provides further that such proceedings "shall be conducted in such parts of the courthouse or the building in which the court is located that are separate and apart from the other parts of the court which are then being used for proceedings pertaining to adults charged with crimes." *Id.*

10. Section 46b-127(c)(1)(A), as amended, further provides that "[a]ny records of such proceedings shall be confidential in the same manner as records of cases of juvenile matters are confidential . . . unless and until the court or jury renders a verdict or a guilty plea is entered in such case on the regular criminal docket." § 46b-127(c)(1)(A). The sole exception to this provision allows records from Transferred Matters to be made available "to the victim of the crime committed by the child to the same extent as the records of the case of a defendant in a criminal proceeding in the regular criminal docket of the Superior Court is available to a victim of the crime committed by such defendant." § 46b-127(c)(1)(B). This narrow exception expressly prohibits further dissemination of such records, providing that "[r]ecords disclosed pursuant to this subparagraph shall not be further disclosed." *Id.*

11. Section 46b-127(c)(1) prohibits members of the public and the press from attending courtroom proceedings in Transferred Matters.

12. Members of the public and the press are also prohibited under Section 46b-127(c)(1) from accessing judicial records in Transferred Matters unless and until a guilty verdict or plea is entered. As a result, judicial records in Transferred Matters will never be publicly available in cases in which a juvenile defendant, tried as an adult, is acquitted. Further, judicial

records in Transferred Matters will not be contemporaneously available in cases resulting in a guilty verdict or plea.

13. The Juvenile Transfer Act took effect on October 1, 2019.

14. Since October 1, 2019, judicial records in all newly Transferred Matters have been automatically sealed, and judicial records in over 100 Transferred Matters pending as of October 1, 2019 have been retroactively sealed. Docket information for Transferred Matters is no longer available to the press or public, nor do the press or public have access to court proceedings in Transferred Matters.

15. The Juvenile Transfer Act "creates a significant impediment to *The Hartford Courant*'s ability to inform its readers about matters of the utmost public interest and concern, and prevents *The Hartford Courant* from engaging in the kind of comprehensive, investigative reporting that the paper is known for and that serves the public interest." Julien Decl. ¶ 19.

16. For example, among the Transferred Matters retroactively sealed in the Stamford-Norwalk Judicial District is the high-profile prosecution of the now 59-year-old Michael Skakel for the 1975 murder of Martha Moxley, which occurred when Skakel was 15 years old. Julien Decl. ¶ 13. Skakel, a relative of the Kennedy family, was tried as an adult and convicted for the 1975 murder in 2000. *Id.* ¶ 14. In 2018, the Connecticut Supreme Court reversed his conviction due to ineffective assistance of counsel. *Id.* The State is contemplating re-trying Skakel. *Id.* ¶ 15. The Courant is unable to access docket information or judicial records in connection with the possible prosecution of Skakel because, on information and belief, Skakel's case has now been sealed pursuant to the Act. Thus, in the event Skakel is retried, *The Hartford Courant* and other members of the press and public will be barred from attending any criminal proceedings in his case. *Id.* at ¶¶ 15–16. This will "permit[] a 59-year-old public figure to be tried in complete

secrecy in connection with a murder that has captured the national attention of the public for over 40 years." *Id.* ¶ 16.

17. The Juvenile Transfer Act will also prevent *The Hartford Courant* from reporting on other matters of significant public interest that continue to occur throughout the State. For example, if the Juvenile Transfer Act applies, the Courant will be unable to provide information to the public about the prosecution of a 16-year-old defendant charged with first-degree manslaughter in connection with the hit-and-run death of a 71-year-old woman during an alleged shoot-out in Hartford in October 2019. Julien Decl. ¶ 17. The Courant has reported extensively on the incident, which has garnered significant public attention. *See e.g.*, Edmund H. Mahony, *At Vigil for 71-Year-Old Grandmother Killed in Hartford, Community Struggles with Senseless Violence*, Hartford Courant (Oct. 26, 2019), https://perma.cc/4QFD-LLWC; Christine Dempsey, *Teen Who Fatally Struck Woman During Shootout Arrested*, Hartford Courant (Oct. 25, 2019), https://perma.cc/GL7V-R2AT. Upon information and belief, this criminal matter is pending, but docket information and judicial records associated with the case have been sealed pursuant to the Act. If his case is subject to the Juvenile Transfer Law, all docket information and judicial records associated with his prosecution, and all hearings and other proceedings, will be closed to the public and the press, and the Courant will be unable to obtain information in order to inform the public about the status of this criminal case. Julien Decl. at ¶¶ 17–18.

18. The Juvenile Transfer Act similarly precludes the Courant from informing the public about other highly publicized prosecutions throughout Connecticut, including that of 16-year-old Alexander Bolanos, who was charged with conspiracy to commit murder in connection with the December 2018 drive-by shooting death of a 12-year-old in Bridgeport, Connecticut. Julien Decl. ¶ 11. The Courant previously reported on Bolanos' arrest and arraignment, along

6

with that of his co-defendants. *See, e.g.*, *Teens Arraigned in Killing of 12-Year Old During Gang 'Hunt'*, Hartford Courant (Dec. 27, 2018), https://perma.cc/5QXR-HF78; Mikaela Porter, *Four Arrested in Shooting Death of 12-Year-Old in Bridgeport*, Hartford Courant (Dec. 24, 2018), https://perma.cc/B5W3-9PTP.

19. On information and belief, all records and proceedings in Bolanos' case have been sealed pursuant to the Act. As with the Skakel case, the Courant is no longer able to access docket information or judicial records in connection with Bolanos' prosecution and will be prohibited from attending any future criminal proceedings in the case. Julien Decl. ¶ 11.

20. In the event that Bolanos is found guilty, court records associated with his case will be unsealed, but the press and the public will have been denied contemporaneous access to the judicial records and proceedings in his case. Julien Decl. ¶ 11. If Bolanos is acquitted, the records will remain under seal and the press and the public will be permanently barred from accessing information about a criminal matter of significant public interest. *Id.*

**The Juvenile Transfer Law is Unconstitutional under the First Amendment.**

21. The First Amendment to the U.S. Constitution, applied to the states through the due process clause of the Fourteenth Amendment, guarantees the public and the press a qualified right to attend criminal trials. *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 603 (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 558–81 (1980) (plurality opinion)).

22. The First Amendment also guarantees the public and the press a qualified right to attend other criminal proceedings. *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*"). Proceedings that have been found presumptively open to the press and the public under the First Amendment include jury selection, preliminary hearings, plea hearings, and sentencing proceedings. *Press-Enterprise II*, 478 U.S. at 13 (preliminary hearings); *Press-Enterprise Co. v. Superior Ct.*, 464 U.S. 501, 509 (1984) ("*Press-Enterprise I*")(jury selection);

7

*United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir. 2005) (sentencing proceedings); *United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988) (plea hearings); *In re Herald Co.*, 734 F.2d 93, 99 (2d Cir. 1984) (pretrial suppression hearings).

23. As the Supreme Court has recognized, public access to court proceedings benefits society as a whole. Open courts enable the public to know that the law is being enforced, which has "community therapeutic value," particularly following the commission of violent crimes. *Press-Enterprise I*, 464 U.S. at 509. "Public proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct by jurors fairly and openly selected." *Id.* In addition, open courts promote public confidence in the judicial system. Allowing the public to observe criminal trials "enhances the quality and safeguards the integrity of the factfinding process" and, at the same time, "fosters an appearance of fairness, thereby heightening public respect for the judicial process." *Globe Newspaper Co.*, 457 U.S. at 606.

24. The First Amendment also guarantees the press and the public a qualified right to inspect judicial records in criminal matters, including transcripts of hearings and trial, court docket sheets, and other filings. *United States v. Doe*, 356 F. App'x 488, 489 (2d Cir. 2009) (finding qualified First Amendment right of access to courtroom transcripts); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004) (docket sheets); *United States v. Suarez*, 880 F.2d 626, 631 (2d Cir. 1989) (documents relating to payments made by defendants to court-appointed counsel); *United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989) ("briefs and memoranda . . . submitted in support of pretrial motions, motions at trial and post-trial motions"); *Haller*, 837 F.2d at 86 (documents filed in connection with plea hearings, including plea agreements); *In re New York Times Co.*, 828 F.2d 110, 114 (2d. Cir. 1987) (pretrial

8

motions); *United States v. Giordano*, 158 F. Supp. 2d 242, 244 (D. Conn. 2001) (affidavits filed in support of criminal complaints).

25. The qualified First Amendment right of access to judicial records also applies to documents submitted or created in connection with judicial proceedings to the same extent that the proceedings themselves are subject to the right of access. *In re New York Times Co.*, 828 F.2d at 114. Access to such judicial records is a "necessary corollary" of the public's right to attend those courtroom proceedings: "It would be an odd result indeed were [the court] to declare that our courtrooms must be open, but that transcripts of the proceedings occurring there may be closed, for what exists of the right of access if it extends only to those who can squeeze through the door?" *Pellegrino*, 380 F.3d at 93 (quoting *United States v. Antar*, 38 F.3d 1348, 1350 (3d Cir. 1994)).

26. Where the qualified First Amendment right applies, the presumption of access may be overcome only by a compelling government interest. *Press-Enterprise I*, 464 U.S. at 510; *Pellegrino*, 380 F.3d at 96 (citing *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994)). To properly close a proceeding or seal a judicial record to which the First Amendment right applies, a court must set forth written findings demonstrating that closure or sealing is necessitated by a compelling government interest and narrowly tailored to that compelling interest. *Press-Enterprise I*, 464 U.S. at 510; *Pellegrino*, 380 F.3d at 96.

27. Proceedings held in connection with Transferred Matters, including trials themselves, are criminal proceedings to which the First Amendment right of access applies. As provided by the Act, a juvenile defendant stands trial and faces punishment[1] as an adult once his

---

[1] At sentencing, courts are instructed to follow the guidelines set forth in Connecticut General Statutes section 54-91g. § 46b-127(d). Under these guidelines, courts should consider "the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development." Conn. Gen. Stat. Ann. § 54-91g(a)(1). If

9

or her case is transferred—save for the secrecy provisions found in Section 46b-127(c)(1). § 46b-127(d).

28.   Proceedings in Transferred Matters cannot be construed as juvenile delinquency proceedings. Juvenile delinquency proceedings are fundamentally distinct from adult criminal proceedings. The juvenile justice system is not designed to be punitive. It is intended to "provide individualized supervision, care, accountability and treatment . . . to those juveniles who violate the law" and to "promote prevention efforts through the support of programs and services designed to prevent re-offending." Conn. Gen. Stat. § 46b-121h. Juveniles tried in delinquency proceedings are not subject to possible criminal conviction or the penalties associated with such a conviction, but rather to an adjudication of delinquency, which carries with it a possible disposition of:

> (1) discharge . . . from the court's jurisdiction with or without a warning, (2) place[ment] . . . on probation supervision for a period not to exceed eighteen months, which may be extended . . . by not more than twelve months, for a total supervision period not to exceed thirty months, or (3) place[ment] . . . on probation supervision with residential placement, for a period not to exceed eighteen months, which may be extended . . . by not more than twelve months, for a total supervision period not to exceed thirty months.

Conn. Gen. Stat. § 46b-140.

29.   The U.S. Supreme Court has recognized that "[t]he Juvenile Court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. The objectives are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment." *Kent v. United*

---

contemplating a sentence so lengthy that "it is likely that the child will die while incarcerated," a court should consider "how the scientific and psychological evidence described in subdivision (1) of this subsection counsels against such a sentence." *Id.* § 54-91(g)(a)(2).

*States*, 383 U.S. 541, 554 (1966). As such, in the context of juvenile delinquency matters, the state "is parens patriae rather than prosecuting attorney and judge." *Id.* at 554–55.

30. Juvenile defendants in Transferred Matters, on the other hand, are prosecuted as adults. They face the possibility of criminal conviction and are subject to the same potential criminal penalties—including imprisonment in adult correctional facilities—as adults.

31. Recognizing this distinction, several states make clear, by statute, that court records and proceedings of juveniles tried as adults, or of juveniles tried in juvenile proceedings for crimes which would constitute a felony if committed by an adult, are presumptively open, absent specific findings compelling closure in a given case.[2]

32. Because the qualified First Amendment right of access applies to the Transferred Matters and their associated judicial records, that right may only be abridged to the extent necessary to protect a compelling state interest. *Press-Enterprise I*, 464 U.S. at 510; *Pellegrino*, 380 F.3d at 96. Such determinations must be made on a case-by-case basis. *Globe Newspaper Co.*, 457 U.S. at 608.

---

[2] *See, e.g.*, Cal. Welf. & Inst. Code § 676 ("members of the public shall be admitted, on the same basis as they may be admitted to trials in a court of criminal jurisdiction, to hearings concerning petitions" alleging that a minor has committed an enumerated particularly serious crime); Ind. Code Ann. § 31-32-6-3 ("a delinquency proceeding is open to the public whenever a petition alleging that the child has committed an act that would be murder or a felony if committed by an adult"); Md. Code Ann., Cts. & Jud. Proc. § 3-8A-13(f)(3)(i) ("in a case in which a child is alleged to have committed a delinquent act that would be a felony if committed by an adult, the court shall conduct in open court any hearing or other proceeding at which the child has a right to appear"); Me. Rev. Stat. tit. 15, § 3307(2)(A) ("the general public may not be excluded from a proceeding on a juvenile crime that would constitute murder or a Class A, Class B or Class C crime if the juvenile involved were an adult"); 42 Pa. Stat. and Cons. Stat. § 6336(e) ("the general public shall not be excluded from any hearings" of a child 14 years of age or older where the "alleged conduct would be considered a felony if committed by an adult" or of a child 12 years of age or older where the alleged conduct would have constituted an enumerated particularly serious offense if committed by an adult); S.D. Codified Laws § 26-7A-36 ("all pleadings and hearings shall be open and a matter of public record if a juvenile is summoned into court for an offense which if committed by an adult would constitute a crime of violence . . . or a crime involving a drug offense . . . and at the time of the offense the juvenile was sixteen years of age or older"); Va. Code § 16.1-302(C) ("hearings held on a petition or warrant alleging that a juvenile fourteen years of age or older committed an offense which would be a felony if committed by an adult shall be open"); WV R RJP Rule 10(a)(9) ("in cases transferred to adult criminal jurisdiction, once the transfer is ordered and any appeal of the transfer is upheld, further proceedings shall be open to the public").

33. The secrecy provisions of the Juvenile Transfer Act do not permit courts to narrowly tailor any restrictions on the public's and the press' right of access to serve a compelling interest in a specific case. Instead, the Act strictly requires complete closure of all proceedings in all Transferred Matters regardless of whether such closure is necessitated by any compelling interest in a given case. It further mandates that all judicial records in such matters be kept entirely confidential, except for disclosure to the victim, unless and until a guilty plea or verdict is entered.

34. Such sweeping, mandated secrecy is far broader than necessary to protect any potential privacy interest that could arise in any particular case. As the Supreme Court has recognized, mandatory closure rules are unconstitutional, even when implemented to protect the privacy interests of juveniles, for "it is clear that the circumstances of the particular case may affect the significance of the interest." *Globe Newspaper Co.*, 457 U.S. at 608, 609 (finding trial courts well-equipped to make case-by-case determinations as to whether closure is necessary, thereby "ensur[ing] that the constitutional right of the press and public to gain access to criminal trials will not be restricted except where necessary to protect the State's interest").

35. The Juvenile Transfer Act also strips trial courts of the authority to make requisite case-specific determinations regarding closure and sealing, and it forbids trial courts from considering less restrictive alternatives to complete closure and sealing, as they are constitutionally required to do. As the Supreme Court recognized in *Press-Enterprise I*, less restrictive alternatives may adequately protect compelling interests. 464 U.S. at 512–13 (suggesting that transcripts containing sensitive information could be partly sealed or have names redacted); *see also United States v. Doe*, 63 F.3d 121, 131 (2d Cir. 1995) (requiring trial court to consider reasonable alternatives prior to closure of pretrial hearings and trial).

## The Juvenile Transfer Law is Unconstitutional Under Article First, Sections 4 and 5 of the Connecticut Constitution.

36. Article first, section 4 of the Connecticut Constitution provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty." Conn. Const. art. 1, § 4.

37. Article first, section 5 of the Connecticut Constitution provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press." Conn. Const. art. 1, § 5.

38. These provisions of the Connecticut Constitution provide at least as much protection for the public's right to attend criminal proceedings and inspect judicial records in criminal matters as the First Amendment. *See Green Party of Connecticut v. Garfield*, 590 F. Supp. 2d 288, 346 (D. Conn. 2008) (citing *Horton v. Meskill*, 376 A.2d 359 (Conn. 1977)).

39. Section 46b-127 is therefore unconstitutional under article first, sections 4 and 5 of the Connecticut Constitution.

## COUNT I
(Declaratory Relief)
### Section 46b-127(c)(1) violates the First Amendment to the U.S. Constitution

40. Plaintiff incorporates by reference the allegations set forth in paragraphs 1–39 above.

41. Trials and other proceedings in Transferred Matters are criminal proceedings to which the qualified First Amendment right of access applies.

42. Judicial records, including the docket sheets, in Transferred Matters are judicial records to which the qualified First Amendment right of access applies.

43. Plaintiff seeks a declaration that Section 46b-127(c)(1) violates the First Amendment to the U.S. Constitution by depriving members of the press and the public of their

13

presumptive right to attend criminal proceedings and inspect judicial records in Transferred Matters.

44.  By acting and threatening to act under the color of state law to deprive Plaintiff of rights guaranteed by the First Amendment, Defendants have violated and continue to violate Plaintiff's First Amendment rights, actionable under 42 U.S.C. § 1983.

45.  Plaintiff has no adequate remedy available at law.

## COUNT II
### (Declaratory Relief)
### Section 46b-127 violates article first, sections 4 and 5 of the Connecticut Constitution

46.  Plaintiff incorporates by reference all the allegations set forth in paragraphs 1–39 above.

47.  Plaintiff seeks a declaration that Section 46b-127(c)(1) violates article first, sections 4 and 5 of the Connecticut Constitution. It does so by depriving the public and the press of their presumptive right to attend criminal proceedings and inspect judicial records in Transferred Matters.

48.  By violating the Connecticut Constitution as set forth above, Defendants have violated and continue to violate Plaintiff's constitutional rights.

49.  Plaintiff has no adequate remedy available at law.

## COUNT III
### (Preliminary Injunctive Relief)

50.  Plaintiff incorporates by reference all the allegations set forth in paragraphs 1–39 above.

51.  In the performance of their general administrative duties, the Court Clerk Defendants have retroactively sealed and continue to seal judicial records, including docket sheets, in Transferred Matters, pursuant to Section 46b-127(c)(1).

52. On information and belief, the Chief Court Administrator has taken steps to close proceedings and seal court records in accordance with Section 46b-127(c)(1).

53. In doing so, Defendants have violated, and continue to violate, Plaintiff's First Amendment rights and the rights guaranteed to Plaintiff by article first, sections 4 and 5 of the Connecticut Constitution.

54. This deprivation of Plaintiff's constitutional rights of access causes Plaintiff to suffer immediate, irreparable harm.

55. No adequate remedy exists at law for the immediate, irreparable harm the defendants' acts have caused and are causing Plaintiff. Plaintiff is therefore entitled to preliminary injunctive relief.

## COUNT IV
(Permanent Injunctive Relief)

56. Plaintiff incorporates by reference the allegations set forth in paragraphs 1–39 above.

57. Upon information and belief, unless otherwise enjoined by this Court, the Court Clerk Defendants will, under color of state law, continue to seal judicial records, including docket sheets, in Transferred Matters, pursuant to Section 46b-127(c)(1).

58. On information and belief, the Chief Court Administrator will, under color of state law, continue to take steps to close proceedings and seal court records in accordance with Section 46b-127(c)(1).

59. By doing so, Defendants will continue to violate Plaintiff's First Amendment rights and the rights guaranteed to Plaintiff by article first, sections 4 and 5 of the Connecticut Constitution.

60. No adequate remedy exists at law for the ongoing irreparable harm the Court Clerk Defendants' acts will cause Plaintiff. Plaintiff is therefore entitled to permanent injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, upon all allegations and counts alleged herein, Plaintiff respectfully asks that this Court:

A. issue judgment declaring that Section 46b-127(c)(1) is unconstitutional on its face under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983;

B. issue judgment declaring that Section 46b-127(c)(1) is unconstitutional on its face under article first, sections 4 and 5 of the Connecticut Constitution;

C. preliminarily and permanently enjoin Defendants, personally and in their role as Chief Court Administrator, Chief Clerk, or Deputy Chief Clerk, from sealing or permitting the sealing of judicial records, including docket sheets, in any Transferred Matter pursuant to Section 46b-127(c)(1);

D. issue an order requiring Defendants, personally and in their role as Chief Court Administrator, Chief Clerk, or Deputy Chief Clerk, to unseal all judicial records, including docket sheets, in Transferred Matters that were sealed pursuant to Section 46b-127(c)(1); and

E. grant such other relief as the Court deems just and proper.

Dated:   December 11, 2019

Respectfully submitted,

THE HARTFORD COURANT COMPANY, LLC

By _____
William S. Fish, Jr. (ct05349)
Alexa T. Millinger (ct29800)
HINCKLEY, ALLEN & SNYDER LLP
20 Church Street, 18th Floor
Hartford, CT 06103
Phone: 860.331.2700
Facsimile: 860.278.3802
wfish@hinckleyallen.com
amillinger@hinckleyallen.com

Katie Townsend (*pro hac vice* pending)
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

Its Attorneys

17