# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE HARTFORD COURANT COMPANY, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>PATRICK L. CARROLL III, in his Official Capacity as Chief Court Administrator of the Connecticut Superior Court; and<br><br>ANN-MARGARET ARCHER; KAREN A. BERRIS; ROBERT BURKE; ANTONIO D'ADDEO; RALPH DAGOSTINE; CYNTHIA DEGOURSEY; JILL DRISCOLL; CAROLINE FARGEORGE; TAMMY FLUET; DAVID S. GAGE; ERIC R. GROODY; LISA C. GROODY; RICHARD L. HAAS, JR.; KERRI HALL; WILLIAM M. HOEY; JUDITH LEE; LAURA A. LEIGH; DEBORA KASZUBA NEARY; CARA PARKINSON; BRANDON PELEGANO; GINA PICKETT; JAMES QUINN; JENNIFER ROBINSON; MARK SHEA; ROY SMITH, JR.; GIOVANNI SPENNATO; GEOFFREY STOWELL; HARALABOS VALASSIS; JULIE VANAM; ROBERT A. WILOCK, II; BRANDI YANAVICH; and MARCI YOUNG, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court,<br><br>    Defendants. | Civil Action No. _____ |

## DECLARATION OF ANDREW JULIEN

I, Andrew Julien, declare as follows:

1

1. I am the Publisher and Editor-in-Chief of *The Hartford Courant*. I have been working at *The Hartford Courant* for more than twenty-five years, first as a reporter, then as Metro Editor, and later as Integrated Media Editor. In 2012, I became Editor and Vice President. I assumed my current position as Publisher and Editor-in-Chief in 2016. I submit this declaration in support of the Complaint filed by The Hartford Courant Company, LLC (the "Courant"), publisher of the *The Hartford Courant,* in the above-captioned case. I have personal knowledge of the matters stated in this declaration.

2. *The Hartford Courant* is the largest daily newspaper in the state of Connecticut and is the oldest continuously published newspaper in the United States. It is a two-time Pulitzer Prize winner; it was awarded the 1992 Pulitzer Prize in Exploratory Journalism and the 1999 Pulitzer Prize in Breaking News Reporting. Several individual reporters and photojournalists employed by *The Hartford Courant* have been named Pulitzer Prize finalists. The Courant is owned by Tribune Publishing Company, a publicly traded company headquartered in Chicago, Illinois.

3. Because of its history and reputation for excellence in journalism, *The Hartford Courant* is a popular and trusted news source for Connecticut residents.

4. *The Hartford Courant* regularly reports on criminal matters and criminal court proceedings. Matters involving juveniles tried as adults are of particular interest to the public. Due to the potential vulnerability of such defendants, our readers are concerned not only with the facts of their cases, but also with the conduct of the proceedings and the nature and quality of the evidence presented. *The Hartford Courant*'s ability to provide robust reporting on these matters helps the public to determine whether the proceedings are fairly conducted. It can also alert the public to possible improprieties and potential miscarriages of justice.

5.  A well-known example of such a case is the prosecution of Peter Reilly. In 1973, Reilly's mother was found murdered, having been raped, beaten, and repeatedly stabbed. After an eight-hour police interrogation, during which no lawyer was present, Reilly—then a teenager—told police, "I definitely did what happened to my mother last night." Reilly subsequently recanted his statement.

6.  Reporters from *The Hartford Courant* attended Reilly's trial and reported extensively on the proceedings. Reilly's statement was the primary piece of evidence presented against him. He was convicted of first-degree manslaughter and sentenced to sixteen years in prison.

7.  *The Hartford Courant*'s reporting shed light on potential flaws in the police investigation and the prosecution's lack of evidence against Reilly. His conviction resulted in significant public outrage and concern. Area residents—including Pulitzer Prize-winning playwright and Connecticut resident Arthur Miller—rallied in support of Reilly and raised money to hire a new legal and investigative team. Three years later, Reilly was granted a new trial and the charges against him were dismissed. The public interest and outcry that resulted from news coverage of Reilly's trial was, in my view, a key factor in further evidence being obtained that ultimately helped to exonerate Reilly.

8.  Though Reilly was 18 years old at the time he was questioned by police, juveniles can be particularly vulnerable in situations like the one experienced by Reilly, in which a young person, unaware of his or her legal rights, is interrogated for hours after a traumatic episode with no access to counsel. When the stakes can be as high as life imprisonment, it is imperative that journalists and news organizations like *The Hartford Courant* have access to court records and proceedings to ensure that the public is informed of any possible improprieties.

9. Under the Juvenile Transfer Act described in the Complaint, if a juvenile in a situation like Reilly's were to be tried for the same crime in Connecticut today, reporters for *The Hartford Courant* (and other members of the press and public) would be prohibited from attending the trial or from accessing any judicial records or docket information regarding the case.

10. In the years since Reilly's trial, cases involving juveniles charged as adults have continued to be of significant interest to the community, and *The Hartford Courant* has continued to cover such cases extensively. For example, when 12-year-old Clinton Howell was killed in a drive-by shooting in Bridgeport in December 2018, *The Hartford Courant*, along with other media in the state, reported on the incident and on the four young people (aged 18, 16, 14, and 12) arrested in connection with Howell's death.

11. One of those individuals, 16-year-old Alexander Bolanos, was charged with conspiracy to commit murder and will be tried as an adult. *The Hartford Courant* is no longer able to access docket information or judicial records in his case because, on information and belief, on or around October 1, 2019, his case was sealed in accordance with the Juvenile Transfer Act. As a result, not only will reporters from *The Hartford Courant* be prohibited from attending criminal proceedings in Bolanos' case, they will have no way of knowing when such proceedings take place, absent a public statement from the prosecution or members of the Bolanos or Howell families. Pursuant to the Juvenile Transfer Law, if Bolanos is acquitted, the records of his case (including any hearing transcripts) will remain permanently sealed.

12. The murder of a 12-year-old is a matter of significant interest to our readers. The community is, understandably, eager to learn more regarding the circumstances surrounding the shooting and the accusations made against those charged with participation in the homicide. But

because of the Juvenile Transfer Act, the public will be deprived of answers to many of these questions, and unable to observe and evaluate Bolanos' prosecution. If the records of his case remain under seal permanently (in the event he is found not guilty), the public will never have the information necessary to help them assess whether justice was properly served.

13. *The Hartford Courant* is now also prohibited from accessing judicial records relating to one of the most high-profile criminal cases in the state of Connecticut—that of 59-year-old Michael Skakel. Skakel, the nephew of Robert F. Kennedy's wife Ethel, was suspected of beating his Greenwich neighbor Martha Moxley to death with a golf club in 1975, when they were both 15 years old. The story drew intense local and national media attention, due in part to Skakel's connections to the Kennedy family. Moxley's murder became the subject of multiple books, documentaries, and a made-for-TV movie.

14. In 2000, the then 40-year-old Skakel was charged with Moxley's murder. Skakel argued that his case should be heard in juvenile court, as he was a teenager at the time of the homicide. Skakel was ultimately ordered to stand trial as an adult, was convicted of murder, and sentenced to 20 years in prison. In 2018, after a lengthy and highly publicized legal battle, the Connecticut Supreme Court reversed Skakel's adult conviction on the grounds of ineffective assistance of counsel. Earlier this year, the U.S. Supreme Court denied a petition by state prosecutors to have the adult conviction reinstated.

15. Prosecutors are now considering whether to retry Skakel. On information and belief, because Skakel's pending case is subject to the Juvenile Transfer Act, judicial records and docket information associated with Skakel's case have now been sealed.

16. In the event Skakel is retried, *The Hartford Courant* and other members of the press and public will be barred from attending any criminal proceedings in his case and from

5

accessing any of the associated judicial records or docket information, permitting a 59-year-old public figure to be tried in complete secrecy in connection with a murder that has captured the national attention of the public for over 40 years.

17.     The Juvenile Transfer Act will also prevent *The Hartford Courant* from reporting on other matters of significant public interest that continue to occur throughout the State. For example, in October 2019, Yvonne Smith, a 71-year-old Hartford grandmother, was killed while crossing the street on her way to the grocery store. After being struck by a speeding vehicle—which was allegedly engaged in a shoot-out—Smith was launched in the air and run over, resulting in her death. A 16-year-old defendant has been arrested and charged with manslaughter, with the possibility of additional charges. If his case is subject to the Juvenile Transfer Law, all docket information and judicial records associated with his prosecution, and all hearings and other proceedings, will be closed to the public.

18.     The particularly violent and tragic death of an elderly grandmother who was beloved in her community is a matter of substantial concern to our readers. If the Juvenile Transfer Act applies, however, *The Hartford Courant* will be prohibited from accessing judicial records or attending criminal proceedings in the prosecution of the 16-year-old accused of being responsible for Ms. Smith's death. As a result, residents of Hartford will be deprived not only of information regarding the events surrounding her tragic death, and of the State's efforts to seek justice for her killing, but also of closure as a community.

19.     The Juvenile Transfer Act creates a significant impediment to *The Hartford Courant*'s ability to inform its readers about matters of the utmost public interest and concern, and prevents *The Hartford Courant* from engaging in the kind of comprehensive, investigative reporting that the paper is known for and that serves the public interest.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 10, 2019 in _____Hartford, Connecticut_____.

_____
Andrew Julien

7