UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE HARTFORD COURANT COMPANY, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>PATRICK L. CARROLL III, in his Official Capacity as Chief Court Administrator of the Connecticut Superior Court; and<br><br>ANN-MARGARET ARCHER; KAREN A. BERRIS; ROBERT BURKE; ANTONIO D'ADDEO; RALPH DAGOSTINE; CYNTHIA DEGOURSEY; JILL DRISCOLL; CAROLINE FARGEORGE; TAMMY FLUET; DAVID S. GAGE; ERIC R. GROODY; LISA C. GROODY; RICHARD L. HAAS, JR.; KERRI HALL; WILLIAM M. HOEY; JUDITH LEE; LAURA A. LEIGH; DEBORA KASZUBA NEARY; CARA PARKINSON; BRANDON PELEGANO; GINA PICKETT; JAMES QUINN; JENNIFER ROBINSON; MARK SHEA; ROY SMITH, JR.; GIOVANNI SPENNATO; GEOFFREY STOWELL; HARALABOS VALASSIS; JULIE VANAM; ROBERT A. WILOCK, II; BRANDI YANAVICH; and MARCI YOUNG, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court,<br><br>        Defendants. | Civil Action No. 3:19-cv-01951-MPS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A
<u>PRELIMINARY INJUNCTION</u>**

Connecticut Public Act No. 19-187 (hereinafter, the "Juvenile Transfer Act" or the

"Act"), permits—and in some cases mandates—the transfer of criminal cases from juvenile

1

delinquency proceedings to adult criminal court when the alleged offender is at least fifteen years of age and his or her alleged offense would fall into certain classes of felonies if committed by an adult. Conn. Gen. Stat. Ann. § 46b-127(a)–(b) (West 2020). The Act requires that all such transferred proceedings be closed to the public, and that all judicial documents in such matters, including docket sheets, remain under seal unless and until the defendant is found or pleads guilty. Section 46b-127(c)(1). In the event the defendant is acquitted, judicial records in the case shall remain under seal indefinitely.

As described more fully below, these provisions violate the presumptive right of members of the press and the public, including Plaintiff The Hartford Courant Company, LLC ("*The Hartford Courant*"), to access judicial records and proceedings in criminal cases—rights guaranteed by the First Amendment to the U.S. Constitution and by article first, sections 4 and 5 of the Connecticut Constitution. *The Hartford Courant* therefore seeks a preliminary injunction prohibiting Defendants, in their official capacities as Chief Court Administrator, Chief Clerk, and Deputy Chief Clerk, from sealing or permitting the sealing of any newly filed judicial records, including docket sheets, pursuant to the Act. In addition, *The Hartford Courant* seeks an order requiring Defendants, in their official capacities as Chief Court Administrator, Chief Clerk, and Deputy Chief Clerk, to unseal all judicial records, including docket sheets, in any matters previously sealed pursuant to the Act.

**FACTUAL BACKGROUND**

The Juvenile Transfer Act was enacted on July 9, 2019 and went into effect on October 1, 2019. *See generally* Pub. Act. 19-187, Gen. Assemb., Reg. Sess. (Conn. 2019). The Act makes several changes to section 46b-127 of the General Statutes of Connecticut ("Section 46b-127"), which governs the transfer of criminal cases from juvenile delinquency proceedings to

2

adult criminal court for defendants between the ages of fifteen and eighteen who have been charged with certain enumerated felonies (hereinafter, "Transferred Matters"). *See generally* Conn. Gen. Stat. Ann. § 46b-127. The juvenile defendants prosecuted in Transferred Matters are subject to all applicable procedures of adult criminal court, as well as the full range of possible penalties, including criminal conviction and imprisonment in adult correctional facilities.

The Act provides that all proceedings in such Transferred Matters "shall be private" and "conducted in such parts of the courthouse . . . that are separate and apart from the other parts of the court which are then being used for proceedings pertaining to adults charged with crimes." Section 46b-127(c)(1)(A). It further provides that "[a]ny records of such proceedings shall be confidential in the same manner as records of cases of juvenile matters are confidential . . . unless and until the court or jury renders a verdict or a guilty plea is entered in such case on the regular criminal docket." *Id.* The sole exception to this provision permits records from Transferred Matters to be made available "to the victim of the crime" but such records "shall not be further disclosed." Section 46b-127(c)(1)(B).

As a result, the Act prohibits members of the press and the public from attending courtroom proceedings in Transferred Matters and from accessing judicial documents in Transferred Matters *unless and until* a guilty verdict or plea is entered. Accordingly, judicial records in such Transferred Matters are not contemporaneously available to the press or the public during the course of proceedings. Moreover, if a juvenile defendant in a Transferred Matter is acquitted, judicial records in his or her case will never be made publicly available, despite the fact that the defendant was tried as an adult.

Since October 1, 2019, judicial records in all newly filed Transferred Matters have been automatically sealed, and judicial records in Transferred Matters pending as of October 1, 2019

have been retroactively sealed.  Docket information for Transferred Matters is no longer available to the press or public, including *The Hartford Courant*, nor do the press or public have access to court proceedings in Transferred Matters.

*The Hartford Courant* is the largest daily newspaper in the state of Connecticut and is the oldest continuously published newspaper in the United States.  It was awarded the 1992 Pulitzer Prize in Exploratory Journalism and the 1999 Pulitzer Prize in Breaking News Reporting.  It regularly reports on criminal matters and criminal court proceedings, including those of juvenile defendants tried as adults.  As a result of the Juvenile Transfer Act, judicial documents, including docket sheets, in recent matters upon which *The Hartford Courant* has reported are now under seal.  *See* Complaint at ¶ 16–19; Julien Decl. ¶ 10–11, 13–15, 17.  Because the Juvenile Transfer Act prohibits the press and the public from attending criminal proceedings in Transferred Matters and from accessing judicial documents in Transferred Matters, *The Hartford Courant* is unable to continue to report on these matters, which are of significant public interest and concern to its readers.  As a result, the public is unable to evaluate the prosecution of juvenile defendants charged in Transferred Matters and will be deprived—in some cases permanently—of information necessary to determine whether justice was properly served.

## ARGUMENT

Entry of a preliminary injunction is warranted where the moving party demonstrates "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A party seeking a preliminary injunction "that will alter the status quo must demonstrate a substantial

4

likelihood of success on the merits." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (internal quotations omitted).

If a court "cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims," it may still issue a preliminary injunction if the moving party shows "sufficiently serious questions going to the merits to make them a fair ground for litigation" and that "the balance of the hardships tips decidedly" in the moving party's favor. *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010); *see also Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015); *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.,* 696 F.3d 206, 215 (2d Cir. 2012). "[I]n the First Amendment context" the "likelihood of success on the merits is the dominant, if not the dispositive, factor" in determining whether to issue a preliminary injunction. *Walsh*, 733 F.3d at 488. For the reasons set forth below, a preliminary injunction should be issued in this case.

## I. *The Hartford Courant* Is Substantially Likely to Succeed on the Merits of Its Claims.

The First Amendment of the U.S. Constitution and article first, sections 4 and 5 of the Connecticut Constitution guarantee the press and the public a presumptive right of access to court proceedings and judicial documents. *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*"); *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 603 (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 558–81 (1980) (plurality opinion)); *N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012); *Green Party of Connecticut v. Garfield*, 590 F. Supp. 2d 288, 346 (D. Conn. 2008) (finding that the Connecticut Constitution provides at least as much protection as the First Amendment of the U.S. Constitution and that Connecticut courts therefore "generally adhere to the guidance of the

5

United States Supreme Court on First Amendment issues."); Conn. Const. art. 1, § 4 ("Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."); Conn. Const. art. 1, § 5 ("No law shall ever be passed to curtail or restrain the liberty of speech or of the press.").

Such openness "has long been recognized as an indispensable attribute" of our justice system. *Richmond Newspapers*, 448 U.S. at 569; *see also United States v. Erie Cty.*, 763 F.3d 235, 238–39 (2d Cir. 2014) ("The notion that the public should have access to the proceedings and documents of courts is integral to our system of government."). It guards against unfairness and inequity in the application of laws, giving "assurance that established procedures are being followed and that deviations will become known" thus enhancing both "the basic fairness" of the judicial system "and the appearance of fairness so essential to public confidence in the system." *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*"). The U.S. Supreme Court has long recognized that the press plays a particularly important role in facilitating public monitoring of the judicial system, acknowledging that "[w]hile media representatives enjoy the same right of access as the public," they often "function[] as surrogates for the public" by attending proceedings, reviewing court documents, and reporting on judicial matters to the public at large. *Richmond Newspapers*, 448 U.S. at 573.

In determining whether the First Amendment right of access attaches to a particular proceeding or judicial document, courts look to the "complementary considerations" of "experience and logic," considering "whether the place and process have historically been open to the press and general public," and "whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise II*, 478 U.S. at 8. In addition, the Second Circuit has also recognized that the public has a constitutional right of

6

access to judicial documents that "are derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004); *see also In re N.Y. Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987) (explaining that "the constitutional right of access" also "appl[ies] to written documents submitted in connection with judicial proceedings that themselves implicate the right of access").

### A. *The Hartford Courant* has a qualified constitutional right of access to criminal proceedings and judicial documents in Transferred Matters.

Juvenile defendants whose cases are transferred under the Act stand trial and face punishment as adults. Unlike juveniles tried in delinquency proceedings—who are not subject to possible criminal conviction or the penalties associated with such a conviction—juvenile defendants in Transferred Matters face the possibility of criminal conviction and are subject to the same potential criminal penalties as adult defendants, including imprisonment in adult correctional facilities. Therefore, in determining whether the First Amendment right of access attaches to Transferred Matters, the Court should look to the well-established constitutional presumption of openness applicable to adult criminal proceedings.

"Experience" undeniably supports the public's right of access to criminal proceedings and judicial records like those at issue here; such openness is firmly rooted in American history. *See Richmond Newspapers*, 448 U.S. at 569 ("[H]istorical evidence demonstrates conclusively that at the time when our organic laws were adopted, criminal trials both here and in England had long been presumptively open. This is no quirk of history; rather, it has long been recognized as an indispensible [sic] attribute of an Anglo-American trial.").

In addition to the right to attend criminal trials (*Globe Newspaper Co.*, 457 U.S. at 603), criminal proceedings that have been found presumptively open to the press and the public under the First Amendment include jury selection (*Press-Enterprise I*, 464 U.S. at 508–09),

7

preliminary hearings (*Press-Enterprise II*, 478 U.S. at 13), plea hearings (*United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988)), pretrial suppression hearings (*In re Herald Co.*, 734 F.2d 93, 99 (2d Cir. 1984)), and sentencing proceedings (*United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir. 2005)).

"Logic" too supports a right of access to judicial documents and proceedings in Transferred Matters. Openness enables the public to know that the law is being enforced, which can have a "community therapeutic value," particularly following the commission of violent crimes. *Press-Enterprise I*, 464 U.S. at 509. "Public proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct by jurors fairly and openly selected." *Id.* As the Supreme Court has explained, the guarantee of a public trial and contemporaneous review by the press and public "has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution." *In re Oliver*, 333 U.S. 257, 270 (1948).[1]

The press has long reported on criminal prosecutions of juveniles tried as adults for serious crimes. *See, e.g.*, *Slender Man Stabbing: Wisconsin Girl Sentenced to 40 Years in Mental Hospital*, The Guardian (Feb. 1, 2018), https://perma.cc/9XR3-ZUMD; *Teen Sentenced to 24 Years for Role in Wylie Man's Murder*, Dallas Morning News (Mar. 9, 2012), https://perma.cc/78GX-Q77Y. The benefits of such reporting to the public and to the proper functioning of the judicial system are legion. It is through such reporting that the public obtains the information necessary to determine whether the proceedings are being fairly conducted and

---

[1] To the extent the Act can be interpreted to strip a criminal defendant of his or her right to a public trial under the Sixth Amendment, the Act is unconstitutional for that reason as well. *See, e.g.*, *United States v. Gupta*, 699 F.3d 682, 690 (2d Cir. 2012) (reversing conviction where public was excluded from *voir dire*); *Smith v. Hollins,* 448 F.3d 533, 540 (2d Cir. 2006) ("The denial of a public trial is a 'structural' error and accordingly is not subject to a harmless error analysis.").

whether, ultimately, justice has been served. To the extent that the State of Connecticut has concluded that juvenile defendants in Transferred Matters are to be tried as adults and subjected to the full range of adult criminal penalties, logic dictates that such proceedings should be afforded the same level of openness as has been traditionally afforded to any other adult criminal proceedings. And, indeed, given the age of the minor defendants, the serious nature of the crimes they are alleged to have committed, and the severity of the penalties they face, public oversight and monitoring of their prosecutions is perhaps even more important than in cases involving adult defendants.

Judicial documents have likewise been historically open to the press and public under the First Amendment, both as a command of "experience" and "logic" and as a "necessary corollary" of the public's right to attend courtroom proceedings. *See N.Y. Civ. Liberties Union*, 684 F.3d at 297 (collecting cases showing that the presumption applies to, among other things, *voir dire* transcripts and proceedings; witness testimony; "judicial records such as videotapes of defendants;" plea agreements and plea hearings; and information on payment of court-appointed counsel); *United States v. Doe*, 356 F. App'x 488, 489 (2d Cir. 2009) (finding qualified First Amendment right of access to courtroom transcripts); *Hartford Courant Co.*, 380 F.3d at 96 (holding that the press and the public have a First Amendment right of access to court docket sheets); *United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989) (finding that the First Amendment right of access applies to "briefs and memoranda . . . submitted in support of pretrial motions, motions at trial and post-trial motions").

Wholesale closure of proceedings and sealing of judicial documents in Transferred Matters—which effectively requires defendants in Transferred Matters to be prosecuted in secret—undermines the important benefits and safeguards of openness that have long been a

bedrock feature of our criminal justice system. *See Richmond Newspapers*, 448 U.S. at 572 ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."); *United States v. Abuhamra*, 389 F.3d 309, 323 (2d Cir. 2004) ("The American legal tradition has long assumed that 'contemporaneous review' of criminal prosecutions 'in the forum of public opinion' serves as an important restraint on abuse of government power.") (quoting *In re Oliver*, 333 U.S. at 270).

### B. Blanket sealing of judicial documents in Transferred Matters is unconstitutional.

Judicial documents, including docket sheets, in Transferred Matters fall squarely within the categories of documents presumptively open to the public under the First Amendment. Where, as here, the press and the public have a qualified First Amendment right of access to judicial documents, such documents may be sealed only if—and to the extent that—shielding them from public view "is essential to preserve higher values." *Press-Enterprise I*, 464 U.S. at 510. Such sealing must be supported in individual cases by "specific, on the record findings" demonstrating that sealing is "essential" and that it is "narrowly tailored" to serve a compelling interest. *Press-Enterprise II*, 478 U.S. at 13–14 (quoting *Press- Enterprise I*, 464 U.S. at 510); *see also In re N.Y. Times Co.*, 828 F.2d at 116 (explaining that "[b]road and general findings" are "not sufficient"). The more extensive the closure of court proceedings or sealing of judicial documents, "the greater must be the gravity of the required interest and the likelihood of risk to that interest" in order to justify such closure or sealing. *Ayala v. Speckard*, 131 F.3d 62, 70 (2d Cir. 1997) (*en banc*). Indeed, the "power to close a courtroom where proceedings are being conducted during the course of a criminal prosecution and/or to seal the records of those proceedings is one to be very seldom exercised, and even then only with the greatest caution,

under urgent circumstances, and for very clear and apparent reasons." *United States v. Cojab*, 996 F.2d 1404, 1405 (2d Cir. 1993).

Contrary to this clear constitutional mandate, the Juvenile Transfer Act requires that all proceedings in Transferred Matters be automatically closed to the public, and that all judicial documents in Transferred Matters—including docket sheets—be automatically sealed. The Act disregards trial courts' obligations to make specific, on-the-record findings in individual cases as to whether sealing is essential and narrowly tailored to serve a compelling interest. *Press-Enterprise II*, 478 U.S. at 13–14. In doing so, it improperly strips trial courts of the power to consider less restrictive alternatives to complete closure and sealing. *Press-Enterprise I*, 464 U.S. at 512–13 (suggesting that transcripts containing sensitive information could be partly sealed or have names redacted); *see also United States v. Doe*, 63 F.3d 121, 131 (2d Cir. 1995) (requiring trial court to consider reasonable alternatives prior to closure of pretrial hearings and trial). Instead, the Act strictly requires complete secrecy in all Transferred Matters regardless of whether any closure or sealing is necessitated by a compelling interest in a given case or whether it is narrowly tailored to serve that interest.

Such extreme secrecy strikes at the core of the First Amendment. Blanket, automatic sealing of all judicial documents in Transferred Matters contravenes long-established rights of press and public access to criminal court proceedings and judicial records guaranteed by the First Amendment. This contravention proves particularly egregious when a defendant in a Transferred Matter is acquitted, in which case all judicial documents, including docket sheets remain permanently hidden from public view. *See Doe*, 356 F. App'x. at 490 ("Where . . . a party seeks to seal the record of criminal proceedings *totally* and *permanently*, the burden is heavy indeed.") (emphasis in original).

11

The wholesale denial of all access to judicial records, including docket sheets, is unquestionably a matter of constitutional significance. "The right of access is the rule, and it is a rare and exceptional case where it does not apply." *Cojab*, 996 F.2d at 1407. There is no state interest that could justify automatic, mandatory closure and sealing of all Transferred Matters. *See Globe Newspaper Co.*, 457 U.S. at 609 (finding that despite a compelling interest in "safeguarding the physical and psychological well-being" of minor victims of sex crimes testifying in adult criminal court, such interest did not justify a mandatory closure rule for "it is clear that the circumstances of the particular case may affect the significance of the interest.").

Indeed, even in the context of juvenile delinquency proceedings, in which the presumption of openness has not generally been held to apply to the same extent as in adult criminal proceedings, courts have rejected attempts to legislatively mandate blanket closure or sealing. *See United States v. Under Seal*, 853 F.3d 706, 727 (4th Cir. 2017) (declining to read the Federal Juvenile Delinquency Act as placing an absolute bar on disclosure of records in juvenile delinquency proceedings as to do so would "raise serious constitutional problems"); *United States v. Three Juveniles*, 61 F.3d 86, 92 (1st Cir. 1995) (finding that, because a construction of the Federal Juvenile Delinquency Act which would mandate across-the-board closure for all juvenile proceedings would "trigger First Amendment concerns," the Act should not be construed as to mandate complete closure, but "merely [to] authorize[] closure, or any other measure[] designed to ensure confidentiality, to be determined on a case-by-case basis at the discretion of the district court."); *United States v. A.D.*, 28 F.3d 1353, 1358, 1362 (3d Cir. 1994) (declining to read the Federal Juvenile Delinquency Act as "mandat[ing] closed hearings and sealed records in all situations" and finding that the Supreme Court's decision in *Globe Newspaper Co.* would "suggest that an across-the-board ban on access to juvenile proceedings

under the Act would pose a substantial constitutional issue."). Here, the constitutional issues at stake extend beyond those raised in juvenile delinquency proceedings. Juvenile defendants under the Act are tried as adults in adult criminal court and are subject to the full range of adult criminal penalties. Automatic, across-the-board closure and sealing is no less egregious in adult criminal court, where a far stronger presumption of openness applies, than it is in juvenile delinquency proceedings.

In short, mandatory blanket sealing of judicial documents under the Juvenile Transfer Act is an impermissible violation of the press and the public's constitutional right of access and continued ongoing sealing of judicial records under the Act cannot be justified.

## II. *The Hartford Courant* Will Suffer Irreparable Harm if a Preliminary Injunction is Not Granted.

Where an alleged deprivation of First Amendment rights has occurred, courts in the Second Circuit have traditionally applied a presumption of irreparable harm upon a showing of a likelihood of success on the merits. *See Walsh*, 733 F.3d at 488 ("Consideration of the merits is virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not the dispositive, factor."). As this Court explained, "generally, if a party is substantially likely to succeed on the merits of a First Amendment claim, the other factors to be considered in determining whether to grant preliminary relief fall into place in light of the gravity of a possible First Amendment violation." *Libertarian Party of Connecticut v. Merrill*, No. 15-CV-1851 (JCH), 2016 WL 10405920, at *8 (D. Conn. Jan. 26, 2016).

*The Hartford Courant* has demonstrated that it is substantially likely to succeed on the merits of its claim that the Juvenile Transfer Act violates its First Amendment right of access to criminal proceedings and judicial documents. Therefore, a presumption of irreparable harm

should apply. In any event, the irreparable harm standard would be satisfied even if the presumption did not apply.

Courts around the country, including this Court, have consistently held that when, as here, the press and the public have a constitutional right of access to judicial documents, such access must be contemporaneous, and any delay constitutes irreparable harm. *See, e.g.*, *Libertarian Party of Connecticut*, 2016 WL 10405920, at *8 ("[T]he loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury.") (quoting *Elrod v. Burns*, 427 U.S. 347, 353 (1976)); *see also Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975) ("[E]ach passing day [that access is delayed] may constitute a separate and cognizable infringement of the First Amendment."); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir. 1994) ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous . . . To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression."); *Paulsen v. Cty. of Nassau*, 925 F.2d 65, 68 (2d Cir. 1991) ("Specifically, our historical commitment to expressive liberties dictates that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod,* 427 U.S. at 373); *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1147 (9th Cir. 1983) (holding that a 48-hour delay in unsealing judicial records is improper, because the effect of the delay acts as a "total restraint on the public's first amendment right of access" during that time).

*The Hartford Courant* has been denied its First Amendment right of access to judicial records, including docket sheets, in Transferred Matters since the Juvenile Transfer Act went

into effect on October 1, 2019 and has suffered irreparable injury as a result. Each passing day during which access continues to be denied constitutes further irreparable harm for which there is no adequate remedy at law. Injunctive relief is therefore essential to vindicate the press and the public's constitutional right of access to judicial documents, including dockets sheets, in the Transferred Matters.

### III. The Balance of the Equities and Public Interest Weigh in Favor of a Preliminary Injunction.

Similarly, the balance of the equities and the public interest favor an award of preliminary injunctive relief. "As with irreparable injury, when a plaintiff establishes a likelihood that [d]efendants' policy violates the U.S. Constitution, [p]laintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction." *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) (internal quotations omitted).

Because the Juvenile Transfer Act violates the First Amendment rights of *The Hartford Courant*—and, by extension, its readers—they have suffered, and continue to suffer, irreparable harm. The press and the public have a significant and legitimate interest in the prosecution of juvenile defendants charged as adults under the Juvenile Transfer Act. However, "the Government does not have an interest in the enforcement of an unconstitutional law." *Walsh*, 733 F.3d at 488 (quoting *Am. Civil Liberties Union v. Ashcroft,* 322 F.3d 240, 247 (3d Cir.2003)).

Defendants under the Juvenile Transfer Act are charged with committing some of the most serious crimes, including murder, rape and arson. Yet blanket sealing of the judicial documents in these matters prevents the press and the public from overseeing the prosecution of these cases and denies the public of the "community therapeutic value" inherent when it "is aware that the law is being enforced and the criminal justice system is functioning." *Press-*

*Enterprise I*, 464 U.S. at 508–09. Secrecy, on the other hand, "den[ies] this outlet and frustrate[s] the broad public interest." *Id.* at 509. Not only does the Juvenile Transfer Act deprive the public of contemporaneous access to the prosecutions of these juvenile defendants, but, with respect to juvenile defendants who are acquitted and whose judicial records (including trial transcripts) remain indefinitely under seal, the public will be permanently deprived of information necessary to help them assess whether justice was appropriately carried out.

"[S]ecuring First Amendment rights is in the public interest." *Libertarian Party of Connecticut*, 2016 WL 10405920, at *8 (quoting *Walsh*, 733 F.3d at 488). In contrast, "it is decidedly against the public interest to abide the continued enforcement of an unconstitutional policy or law." *Deferio v. City of Syracuse*, 193 F. Supp. 3d 119, 131 (N.D.N.Y. 2016). Therefore, the balance of the equities weighs in *The Hartford Courant's* favor and the public interest will be strongly served by granting its request for a preliminary injunction.

**IV.** ***The Hartford Courant* Should Not Be Required to Give Security in Order to Obtain a Preliminary Injunction.**

Fed. R. Civ. P. 65(c) provides, in part, that a party granted a preliminary injunction must give security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Courts are vested "with wide discretion in the matter of security" and may choose to "dispense with the filing of a bond." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (internal quotations and citations omitted).

Federal courts, including the Second Circuit, have found waiver of the security requirement appropriate when the litigation at issue is brought in the public interest or challenges the infringement of a constitutional right. *See Pharmaceutical Soc. of N.Y. v. N.Y. Dep't of Soc. Servs.*, 50 F.3d 1168, 1175 (2d Cir. 1995) (affirming waiver of security requirement where

preliminary relief sought by professional organization acting on behalf of indigent Medicaid recipients was "pursued to enforce public interests"); *Kermani v. N.Y. State Bd. of Elections*, 487 F. Supp. 2d 101, 116 (N.D.N.Y. 2006) (waiving the requirement in First Amendment challenge to campaign finance statute "given the important constitutional and public policy issues arising in this matter"); *Greenwich Bd. of Educ. v. Torok*, No. 03-cv-1407, 2003 WL 22429016, at *3 n.7 (D. Conn. Oct. 22, 2003) (exercising the court's right to dispense with requiring a bond where the requirement could "discourage children and their parents from enforcing their federal rights"); *see also Temple Univ. v. White,* 941 F.2d 201, 220 (3d Cir. 1991) (upholding waiver of security requirement where the moving party "pursued a course of litigation clearly in the public interest"); *Crowley v. Local No. 82, Furniture & Piano Moving,* 679 F.2d 978, 1000 (1st Cir. 1982), *rev'd on other grounds,* 467 U.S. 526 (1984) (recognizing an exception to the Fed. R. Civ. P. 65(c) security bond requirement in "suits to enforce important federal rights or public interests."); *Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326, 1335–36 (M.D. Fla. 2009) ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right.").

Here, *The Hartford Courant* seeks preliminary injunctive relief in order to halt the ongoing infringement of the press and the public's presumptive constitutional rights of access to judicial records in Transferred Matters wrought by the Act. The Court should therefore find that *The Hartford Courant* need not give security in order to obtain a preliminary injunction.

## CONCLUSION

For the reasons set forth above, *The Hartford Courant* respectfully requests that the Court issue a preliminary injunction enjoining the Defendants, in their official capacities as Chief Court Administrator, Chief Clerk, and Deputy Chief Clerk, from sealing or permitting the sealing of

any newly filed judicial records, including docket sheets, in any Transferred Matter pursuant to Section 46b-127(c)(1).  In addition, *The Hartford Courant* respectfully seeks preliminary injunctive relief to require Defendants, in their official capacities as Chief Court Administrator, Chief Clerk, and Deputy Chief Clerk, to unseal all judicial records, including docket sheets, in any Transferred Matters previously sealed pursuant to Section 46b-127(c)(1).

Dated: March 26, 2020

<div style="margin-left: 40%;">

Respectfully submitted,

THE HARTFORD COURANT COMPANY, LLC

By: */s/ William S. Fish, Jr.*
    William S. Fish, Jr. (ct05349)
    Alexa T. Millinger (ct29800)
    HINCKLEY, ALLEN & SNYDER LLP
    20 Church Street, 18th Floor
    Hartford, CT 06103
    Phone: 860.331.2700
    Facsimile: 860.278.3802
    wfish@hinckleyallen.com
    amillinger@hinckleyallen.com

    Katie Townsend (phv10445)
    THE REPORTERS COMMITTEE FOR
    FREEDOM OF THE PRESS
    1156 15th St. NW, Suite 1020
    Washington, D.C. 20005
    Phone: 202.795.9300
    Facsimile: 202.795.9310
    ktownsend@rcfp.org

    Its Attorneys

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed on March 26, 2020. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Katie Townsend*
Katie Townsend
*Counsel for The Hartford Courant Company, LLC*